**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| IN THE MATTER OF THE COMPLAINT | § | |
| OF PRIDE OFFSHORE, INC., AS | § | |
| OWNER OF THE J/U PRIDE WYOMING | § | |
| FOR EXONERATION FROM, OR | § | CIVIL ACTION NO. H-08-3109 |
| ALTERNATIVELY, LIMITATION OF | § | |
| LIABILITY | § | |
| | § | |

**MEMORANDUM AND ORDER**

This maritime dispute arises out of damage allegedly caused when a jack-up rig, the PRIDE WYOMING, detached from its moorings during Hurricane Ike in September 2008. Pride Offshore, Inc.,[1] the rig owner, filed a complaint in exoneration or alternatively for limitation of liability, (Docket Entry No. 1), and Century Exploration New Orleans, Inc. filed a claim, (Docket Entry No. 47). Pride Offshore moved for summary judgment, arguing that the economic-loss rule precludes Century Exploration's claim. (Docket Entry No. 75). Century Exploration responded with a different theory and asked for leave to amend. (Docket Entry No. 77). Pride Offshore replied, arguing that this court should grant its motion for summary judgment and deny Century Exploration's motion to amend as futile. (Docket Entry No. 78).

For the reasons explained below, this court grants Pride Offshore's motion for summary judgment, but to the extent the motion was based on a challenge to the sufficiency of the claim allegations, Century Exploration is granted leave to amend. An amended complaint must be filed by **February 25, 2011**.

---

[1]  The parties have noted that for the purpose of this proceeding, Seahawk Drilling, Inc. is the successor-in-interest to the plaintiff, Pride Offshore, Inc. (Docket Entry No. 50 at 1 n.1). For simplicity, the plaintiff is referred to as Pride Offshore.

I. **Background**

The PRIDE WYOMING was a 250-foot mat slot jack-up rig operating in the Gulf of Mexico. (Docket Entry No. 1 ¶ 4). When Hurricane Ike struck in September 2008, the rig was located in Ship Shoal Block 283, about 90 miles south of Houma, Louisiana. (*Id.* ¶ 5). The hurricane blew the rig off its location, causing it to sink. (*Id.* ¶ 6). Parts of the PRIDE WYOMING's wreckage settled on top of pipelines belonging to The Williams Companies, Inc. and Tennessee Gas Pipeline Company (TGPS). (*Id.* ¶ 7).

Pride Offshore filed this complaint on October 20, 2008. (Docket Entry No. 1). On August 18, 2009, Century Exploration filed its claim, alleging that part of the wreckage from the PRIDE WYOMING "struck and damaged pipelines that interfered with Century's operations and necessitated repairs. Century had property interests in one such pipeline and contributed to its repairs." (Docket Entry No. 47, ¶ 3). Century Exploration claimed approximately $21 million in damages "caused solely by, and . . . wholly due to, the unseaworthiness of the J/U Pride Wyoming, the negligence of her master and crew, and the negligence of her owners and operators." (*Id.* ¶¶ 5–6). On January 11, 2010, Century Exploration amended to add allegations of recklessness and intentional misconduct. (Docket Entry No. 63 ¶ 5). Neither version of the claim alleged that Century Exploration was aware of Pride Offshore's contract to use the TGPC pipeline.

Pride Offshore argues that summary judgment is appropriate for two reasons. The first is that Century Exploration's amended claim is insufficient because it fails to allege that Pride Offshore knew of Century Exploration's contract with TGPC. The second is that Century Exploration lacks evidence of a proprietary interest in the pipeline that would support economic-loss damages for negligence.

II.     **Analysis**

A.     **The Legal Standards**

Pride Offshore's motion concerns the application of the *Robins Dry Dock* rule.  In  *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303 (1927), the Supreme Court overturned a verdict in favor of the plaintiffs for breach of contract based on damage to a third party's property.  "Their loss arose only through their contract with the owners — and while intentionally to bring about a breach of contract may give rise to a cause of action, no authority need be cited to show that, as a general rule, at least, a tort to the person or property of one man does not make the tort-feasor liable to another merely because the injured person was under a contract with that other unknown to the doer of the wrong."  *Id.* at 308–09 (citations omitted).  "Although criticized from time to time, *Robins Dry Dock* remains good law." *Allders Int'l Ltd. v. United States*, No. 94 CIV. 5689 (JSM), 1995 WL 251571, * 2 (S.D. N.Y. Apr. 28, 1995).  "The Fifth Circuit continues to apply the *Robins Dry Dock* principle to most maritime cases, carving out an exception only for cases involving a collision between two vessels not in privity of contract." *Norwegian Bulk Transport A/S v. Int'l Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008) (citing *Amoco Transport Co. v. S/S MASON LYKES*, 768 F.2d 659 (5th Cir. 1985)).  "Since the *Amoco Transport* decision, the Fifth Circuit . . .  has not recognized exceptions to the rule in *Robins Dry Dock* outside of the context of collision cases." *Id.* at 413 (citations omitted).

The first ground Pride Offshore asserts in moving for summary judgment rests on the sufficiency of Century Exploration's amended complaint.  "[A] summary-judgment motion may be made on the basis of the pleadings alone, and if this is done it functionally is the same as a motion to dismiss for failure to state a claim . . . ."  10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER &

3

MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2713, at 222–23 (3d ed. 1998) (citations omitted).  A complaint may be dismissed under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and *Ashcroft v. Iqbal*, — U.S. —, 129 S. Ct. 1937 (2009), the Supreme Court confirmed that Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Twombly* abrogated the Supreme Court's prior statement in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Twombly*, 550 U.S. at 562–63 ("*Conley*'s 'no set of facts' language . . .  is best forgotten as an incomplete, negative gloss on an accepted pleading standard . . . .").  To withstand a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see also Elsensohn v. St. Tammany Parish Sheriff's Office*, 530 F.3d 368, 372 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).  The Court explained that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555).

When a plaintiff's complaint fails to state a claim, the court should generally give the plaintiff at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice.  *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs

advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.");
*see also United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004) ("Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification . . . is considered an abuse of discretion." (internal citation omitted)). However, a plaintiff should be denied leave to amend a complaint if the court determines that "a proposed amendment . . . clearly is frivolous, advancing a claim or defense that is legally insufficient on its face . . . ." 6 WRIGHT, MILLER & KANE § 1487, at 732–33; *see also Ayers v. Johnson*, 247 F. App'x 534, 535 (5th Cir. 2007) (unpublished) (per curiam) ("'[A] district court acts within its discretion when dismissing a motion to amend that is frivolous or futile.'" (quoting *Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S. of Am. Co.*, 195 F.3d 765, 771 (5th Cir.1999))).

The second basis for Pride Offshore's motion is the sufficiency of the evidence in the record to raise a disputed fact issue material to Century Exploration's claim. Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)). If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." *See Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted). "A fact is 'material' if its

5

resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56(a) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

### B.   Whether Century Exploration's Amended Claim Sufficiently Alleges Intentional Interference with Its Contractual Relations

Century Exploration's amended claim alleges that Pride Offshore acted recklessly and intentionally. Citing *Nautilus Marine, Inc. v. Niemala*, 170 F.3d 1195, 1196–97 (9th Cir. 1999), Pride Offshore argues that "there is no exception to the *Robins Dry Dock* rule for intentional or reckless conduct." (Docket Entry No. 75 at 6). Century Exploration responds that Pride Offshore overstates the holding of *Nautilus Marine*. According to Century Exploration, the Ninth Circuit in *Nautilus Marine* did not rule that a defendant intentionally interfering with a contract would be covered by the economic-loss rule. Instead, the court ruled only that a defendant acting without

6

knowledge of the contract in question would be covered by that rule.  (Docket Entry No. 77 at 3 (citing *Nautilus Marine*, 170 F.3d at 1196–97)). Century Exploration argues that Pride Offshore "intentionally placed a patently inadequate rig on the [sea floor], knowing that it would not withstand hurricane force conditions and would not remain on site.  Pride, a long-time driller on the [Outer Continental Shelf] knew that if the rig came loose, it would certainly damage subsea pipelines which permeate the seabed. Pride also knew that the producers on the [Outer Continental Shelf] would have contracts with pipeline owners to transport the oil and gas to shore, and knew that the damage to the pipelines would cause the production facilities to shut down." (Docket Entry No. 77 at 6).

The arguments that Century Exploration makes in its response are not alleged in its claim, even as amended.  Century Exploration's amended claim does not refer to Pride Offshore's knowledge of its contract with TGPC.  Acknowledging this gap, Century Exploration asks leave to file an amended complaint reciting these factual allegations.  (*Id.* at 6 n.4).

Pride Offshore argues that the proposed amended claim would be futile.  Pride Offshore faults Century Exploration for:

> fall[ing] short of alleging that [Pride Offshore] ever had actual knowledge of Century's contracts with TGPC.  Century is simply trying to ignore the requirement that [Pride Offshore] have actual knowledge of the contracts because it could never prove such an allegation, and it is attempting to get by with merely alleging reckless allision.  However, as the Ninth Circuit made clear, 'an intent to allide does not equate to an intent to interfere with the defendant's contract.' [Pride Offshore] must have had actual knowledge of Century's contract with TGPC and let its drilling rig loose in a hurricane in order to interfere with a particular contract.  Century knows it is unable to even plausibly allege that [Pride Offshore] had actual knowledge of Century's contracts with TGPC, or intentional interference with these contracts, and therefore Century's proposed pleadings amendment would be futile.

7

(Docket Entry No. 78 at 4–5) (footnote, citation, and alterations omitted).

In responding to Century Exploration's arguments, Pride Offshore appears to have scaled back its characterization of the *Nautilus Marine* court's holding.  In the response, Pride Offshore characterizes the case as holding that "an intent to allide does not equate to an attempt to interfere with the defendant's contract."  (Docket Entry No. 78 at 5 (quoting *Nautilus Marine*, 170 F.3d at 1197) (alterations omitted)).  This accurately reflects the holding.  The Ninth Circuit distinguished the facts before it from those in "cases holding that *Robins Dry Dock* does not preclude recovery for intentional interference with contract relations."  *Nautilus Marine*, 170 F.3d at 1197.  "The key to these cases," the court explained, "is not merely that the tort is intentional, but that the tortfeasor knew of the plaintiff's contractual relation and intended to interfere with it.  Nautilus has not stated a claim of intentional interference with contractual relations, however, precisely because it did not allege, and could not show, such knowledge and intent."  *Id.* (citations omitted).  Century Exploration's characterization of the holding is consistent.

Because Century Exploration has effectively sought leave to amend without filing a proposed amended complaint, it is difficult to determine whether it proposes to allege that Pride Offshore knew of specific contracts between Century Exploration and TGPC or that Pride Offshore knew that Century Exploration had to have contracts with some pipeline owner.  To provide a sufficient basis to rule on the futility claim, Century Exploration will be granted leave to file an amended complaint.  The allegations in an amended claim will enable Pride Offshore to clarify the basis for its motion to dismiss and enable this court to rule whether the allegations are sufficient.  The motion for summary judgment based on the adequacy of the pleadings is granted, with leave to amend.

**C.    Whether Century Exploration Has a Proprietary Interest in the Pipeline**

Pride Offshore also argues that summary judgment is appropriate under *Robins Dry Dock* for any claim based on Pride Offshore's negligence on the basis that the undisputed facts show that Century Exploration did not have a proprietary interest in the damaged pipeline. Courts consider three factors to determine whether a plaintiff's interest is proprietary: "actual possession or control, responsibility for repair and responsibility for maintenance." *IMTT-Gretna v. Robert E. Lee SS*, 993 F.2d 1193, 1194 (5th Cir. 1993) (summary calendar) (citing *Tex. Eastern Trans. v. McMoran Offshore Explor.*, 877 F.2d 1214, 1225 (5th Cir. 1989)). If a plaintiff cannot meet any of the factors, the case must be dismissed. *Id.*

In its response, Century Exploration explains that it "does not rely upon" a proprietary interest in the pipeline to justify recovery. (Docket Entry No. 77 at 1–2). This statement, as Pride Offshore points out, abandons the negligence claim.

Century Exploration does not concede that Pride Offshore is correct. In a footnote, citing no authority, Century Offshore argues:

> With respect to the proprietary interest issue, the evidence is, and [Pride Offshore] does not dispute, that subsequent to the pipeline damage, Century contributed to the cost of repairs. One of the critical indicia of proprietary interest is liability for repairs. The fact that Century incurred this liability post-accident is immaterial. Century's contribution to repairs is sufficient evidence of its proprietary interest. At a minimum, Century is entitled to recover its contribution to the repair costs.

(*Id.* at 2 n.1). Pride Offshore responds in a footnote of its own, also without citing authority: "Although 'responsibility for repairs' is one factor considered in determining whether a proprietary interest existed at the time of the damage, Century has already admitted that it was *not* responsible for repairs to the [pipeline] at the time of the alleged damage." (Docket Entry No. 78 at 2 n.3).

Century Offshore has acknowledged that it has no proprietary interest in the pipeline. Its contribution to the repair costs does not raise a fact issue as to whether it has a negligence claim against Pride Offshore seeking to recover such payments. The motion for summary judgment based on the absence of a proprietary interest in the damaged pipeline is granted.

## IV.   Conclusion

Pride Offshore's motion for summary judgment is granted for the reasons set out above. Century Exploration may amend its complaint no later than **February 25, 2011**.

SIGNED on February 2, 2011, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

10